## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:13-cv-_____

LEHMAN BROTHERS HOLDINGS INC,

      Plaintiff,

v.

PMAC LENDING SERVICES, INC., f/k/a PREFERRED MORTGAGE ALLIANCE CORP.

      Defendant.

---

## COMPLAINT

---

Plaintiff, Lehman Brothers Holdings Inc. ("LBHI"), by and through its undersigned attorneys, and for claims for relief against Defendant PMAC LENDING SERVICES, INC., f/k/a PREFERRED MORTGAGE ALLIANCE CORP. ("PMAC"), alleges as follows:

### I. NATURE OF ACTION

1. At all times relevant hereto, Lehman Brothers Bank, FSB ("LBB," and collectively with LBHI, "Lehman") purchased mortgage loans from PMAC pursuant to a series of written contracts in which PMAC represented and warranted certain facts relating to the quality of the loans and the loan underwriting. LBB subsequently assigned its rights under those contracts to LBHI. With respect to certain of these mortgage loans, PMAC breached provisions of the contracts because the loans were not as represented and, therefore, required that PMAC repurchase from, or indemnify Lehman for, the mortgage loans which failed to comply with the parties' contracts. By this action, LBHI seeks to recover money damages for injuries that have been

{25684501;1}

sustained as a result of PMAC's failure or refusal to honor its obligation to repurchase loans and/or indemnify Lehman for its incurred losses.

## II.  PARTIES

2.      Plaintiff LBHI is a Delaware corporation with its principal place of business in New York, New York.

3.      Defendant PMAC is a California corporation with its principal place of business at 15325 Fairfield Ranch Rd., Suite 200, Chino Hills, CA 91709.

4.      At all relevant times, PMAC is authorized to do business in Colorado and maintains a registered agent in Colorado.

5.      Upon information and belief, none of the current shareholders in PMAC are citizens of Delaware or New York.

## III.  JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff LBHI and Defendant PMAC, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.      Personal jurisdiction comports with due process under the United States Constitution and the long-arm statutes of Colorado because PMAC has been registered to do business in Colorado since March 9, 2004 and has maintained an agent in the state since that time.

8.      PMAC has purposefully availed itself of the benefit of doing business— both with and without Lehman—in Colorado.  On information and belief, PMAC's business in Colorado includes, but is not limited to, mortgage lending operations.

9.     On December 31, 2004, PMAC entered into a business relationship with the Lehman entities pursuant to which PMAC would sell residential mortgage loans to Lehman.  That relationship was overseen by Aurora Loan Services, LLC ("Aurora"), a Lehman subsidiary based in Littleton, Colorado.

10.    PMAC has had continuous and systematic communication with Lehman entities in Colorado, such as Aurora, including with respect to the loans and related transactions at issue in this case.  This includes:  (1) recertification of their ability to originate loans; (2) securing delegated underwriting authority, which affected Republic's ability to approve mortgage loans to sell to Lehman with less oversight from Lehman; and (3) responding to repurchase demands from Lehman issued by Lehman's agent Aurora from Colorado.

11.    Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events that give rise to the claims occurred in this District and because the division of LBHI that oversees its residential mortgage loss recovery program is based in Greenwood Village, Colorado, and thus its witnesses and documents are located here.

## IV.  **FACTUAL ALLEGATIONS**

12.    At all relevant times, Lehman engaged in the purchase and sale of mortgage loans.

13.    PMAC engages in mortgage lending, as well as the sale of mortgage loans on the secondary market to investors such as Lehman.

14.  On or about January 22, 2004 and September 1, 2005, PMAC entered into a written Loan Purchase Agreement with LBB ("Agreement").  True and correct copies of the LPAs are attached hereto as **Exhibit 1**.

15.  The LPA specifically incorporates the terms and conditions of the Seller's Guide of Lehman's agent, Aurora Loan Services LLC, which sets forth additional duties and obligations of PMAC.

16.  The Seller's Guide in its entirety is valid and binding upon PMAC. Attached hereto as **Exhibit 2** are the specific Sections most directly pertinent to the claims in this Complaint.

17.  The LPA and the Seller's Guide (collectively the "Agreement") set forth the duties and obligations of the parties with respect to the purchase and sale of mortgage loans, including but not limited to purchase price, delivery and conveyance of the mortgage loans and mortgage loan documents, examination of mortgage loan files and underwriting, representations and warranties concerning the parties as well as the individual mortgage loans purchased or sold, and remedies for breach.

18.  PMAC sold mortgage loans to LBB pursuant to the terms of the Agreement and Seller's Guide, including the following loans:

Borrower:  Cubenas, Gervacio

Aurora Loan No.:    ******8908

PMAC Loan No.:    ******8908

Property Address:  950 South Acacia Lane

Rialto, California  92376

Borrower:   Bernardino, Labiano

Auroroa Loan No.:   ******3297

Property Address:   230 East Flamingo Road 309

Las Vegas, Nevada 89109

(collectively, the "Loans").

19.   LBB purchased the Loans from PMAC.

20.   Subsequent to the sale of the Loans by PMAC to LBB, LBB sold the Loans to LBHI.

21.   Subsequent or simultaneously with the sale by LBB to LBHI, LBB assigned to LBHI all of its rights and remedies under the Agreement pertaining to the Loans.

### Misrepresentation/Underwriting Defects

22.   With respect to each of the loans sold to Lehman under the Agreement and Seller's Guide, PMAC made a number of representations, warranties and covenants concerning the mortgage loans including, but not limited to the following:

(a)   the validity of all mortgage loan documentation;

(b)   the accuracy and integrity of all information and documentation regarding borrower identity, income, employment, credit, assets, and liabilities used in making the decision to originate the mortgage loans;

(c)   occupancy by the borrowers of the properties securing the mortgage loans;

(d)   the ownership, nature, condition, and value of the real properties securing the mortgage loans; and

(e)   the conformance of the mortgage loans with applicable underwriting guidelines and loan program requirements.

23.   PMAC also represented and/or warranted that no errors, omissions, misrepresentations, negligence, fraud, or similar occurrence took place with respect to the mortgage loans by any person involved in the origination of the mortgage loans, and that no predatory or deceptive lending practices were used in the origination of the mortgage loans.

24.   PMAC represented and/or warranted that it had the ability to perform its obligations under, and satisfy all requirements of, the Agreement.

25.   Lehman discovered material problems with the Loans and found that PMAC had breached representations, warranties and/or covenants under the Agreement, including, without limitation, those representations and warranties set forth above.

26.   Lehman, through its agent, provided PMAC with notice of PMAC's breaches of representations, warranties, and covenants with respect to the Loans.

27.   The written notices advised PMAC as to the nature of the discovered breaches with respect to each Loan.   There may be additional breaches that LBHI discovered after providing the written notices or has yet to discover which also pertain to the Loans.

28.   PMAC failed to repurchase/indemnify as promised.

29.   Misrepresentations contained within the loan files constitute a material breach of PMAC's representations, warranties and covenants contained in the Seller's Guide, including but not limited to the representations and warranties set out in §§ 703(1), 703(12), 703(27), and 703(36):

> No document, report or material furnished to Purchaser in any Mortgage Loan File or related to any Mortgage Loan (including, without limitation, the Mortgagor's application for the Mortgage Loan executed by the Mortgager), was falsified or contains any untrue statement of fact or omits to state a fact necessary to make the statements contained therein not misleading.

> The documents, instruments and agreements submitted for loan underwriting were not falsified and contain no untrue statement of material fact or omit to state a material fact required to be stated therein or necessary to make the information and statements therein not misleading. No fraud was committed in connection with the origination of the Mortgage Loan. The Seller has reviewed all of the documents constituting the Mortgage Loan File and has made such inquiries as it deems necessary to make and confirm the accuracy of the representations set forth herein.

> Seller represents that there is no circumstance or condition with respect to the Mortgage, the Mortgaged Property, the Mortgagor or the Mortgagor's credit standing, that can reasonably be expected to cause private institutional investors to regard the Mortgage Loan as an unacceptable investment, cause the Mortgage Loan to become delinquent, or adversely affect the value or marketability of the Mortgage Loan.

> Seller hereby represents and warrants that all appraisals and other forms of real estate valuation conducted in connection with the Mortgage Loan comply [with applicable law] and the requirements of Fannie Mae and Freddie Mac….The fair market value of the Mortgaged Property as indicated by the property appraisal or valuation is materially accurate.

30.    Lehman purchased the Loans from PMAC in reliance upon PMAC's representations and warranties, as made clear by § 701 of the Seller's Guide:

> Seller acknowledges that Mortgage Loans are purchased in reliance upon: (i) the truth and accuracy of Seller's representations and warranties set forth in the Loan Purchase Agreement and this Seller's Guide, each of which representations and warranties relates to a matter material to such purchase; and (ii) Seller's compliance with each of the agreements, requirements, terms, covenants and conditions set forth in the Loan Purchase Agreement and this Seller's Guide.

31.   The Agreement, at § 710 of the Seller's Guide, specifies that Lehman or its agent may demand that PMAC repurchase, and that PMAC shall repurchase, any mortgage loan that suffers an EPD:

> …if a loan becomes an Early Payment Default in accordance with Section 715 herein, Seller shall, at Purchaser's option, repurchase the related Mortgage Loan… at the Repurchase Price.  Any such repurchase shall occur no later than thirty (30) days after the earlier of the date on which Purchaser notifies Seller of such breach or the date on which Seller knows of such breach.

32.   PMAC acknowledged and agreed that a loan may suffer an EPD in one of two ways, as set forth in § 715 of the Seller's Guide:

> For Mortgage Loans prior-approved by Purchaser (i.e. as to which Purchaser underwrote the loan prior to Purchase), a mortgage loan has an early payment default if the first monthly payment due Purchaser is not made within thirty (30) days of its due date.
>
> For Mortgage Loans delivered pursuant to Seller's Delegated Underwriting Authority, a Mortgage Loan has an early payment default if either the first or second monthly payment due the Purchaser is not made within 30 days of each such monthly payment's respective due date.

33.   PMAC was granted delegated underwriting authority on July 15, 2005.

34.   The breaches discussed above materially and adversely affected the value of the Loan and the interests of LBHI causing LBHI to lose over three-hundred, fifty thousand dollars ($350,000).

35.   PMAC further promised to indemnify Lehman for any and all losses that in any way relate to or result from any act or failure to act or any breach of any warranty, obligation, representation, or covenant contained in the Agreement, as set forth in § 711 of the Seller's Guide:

> In addition to any repurchase and cure obligations of Seller, and any and all other remedies available to Purchaser under this Seller's Guide and the Loan Purchase Agreement, Seller shall indemnify Purchaser…from and

> hold them harmless against all claims, losses, damages, penalties, fines, claims, forfeitures, lawsuits, court costs, reasonable attorney's fees, judgments and any other costs, fees and expenses that the Purchaser may sustain in any way related to or resulting from any act or failure to act or any breach of any warranty, obligation, representation or covenant contained in or made pursuant to this Seller's Guide or the Loan Purchase Agreement.

36.   Finally, as to Loan ****3297, Lehman's damages include the amount paid by Lehman to indemnify a third-party government-sponsored entity ("GSE") due to the breaches of representations and warranties committed by PMAC related to these Loans.

37.   PMAC also agreed to pay the reasonable attorneys' fees incurred by Lehman in enforcing PMAC's obligations, as set forth in § 711 of the Seller's Guide:

> In addition to any and all other obligations of Seller hereunder, Seller agrees that it shall pay the reasonable attorneys' fees of Purchaser incurred in enforcing Seller's obligations hereunder, including, without limitation, the repurchase obligation set forth above.

38.   PMAC has refused or otherwise failed to repurchase the Loans and/or indemnify Lehman for losses related thereto, and has otherwise failed to comply with its obligations under the Agreement.

39.   PMAC's failure and refusal to honor its contractual obligations discussed above caused LBHI to suffer losses on the Loans which it would not have suffered had PMAC honored its obligations.

40.   Pursuant to Section 8 of the Agreement, the laws of the State of New York govern this contract action.

41.   All conditions precedent to bringing this action have been met, occurred or have been waived.

## V.  CLAIMS FOR RELIEF

### First Claim for Relief
(Breach of Contract
– all Loans)

42.   LBHI hereby incorporates by reference the allegations set forth above as though fully set forth herein.

43.   The Agreement is a valid and enforceable contract that is binding upon PMAC.

44.   Lehman, Lehman's agents, and any and all assignees of Lehman's rights have substantially performed all of their obligations under the Agreement.

45.   PMAC breached the Agreement by breaching the contractual representations, warranties, and/or covenants relating to the Loans, including but not limited to those described above in Section IV above.

46.   PMAC further breached the Agreement by refusing or otherwise failing to repurchase the Loans and/or failing to indemnify Lehman for its losses related to the Loans.

47.   PMAC's breaches of the Agreement resulted in actual and consequential damages to LBHI in excess of $350,000.00, in an amount to be proven by the evidence, to which LBHI is entitled plus prejudgment interest pursuant to New York law, attorneys' fees, litigation costs and all other fees and costs provided by the Agreement.

**Second Claim for Relief**
(Breach of Express Warranty
– all Loans)

48.   LBHI hereby incorporates by reference the allegations set forth above as though fully set forth herein.

49.   PMAC made a number of express warranties with respect to material facts concerning the Loans, including but not limited to the warranties described in Section IV above.

50.   The warranties contained in the Agreement were an essential part of the bargain, and Lehman purchased the Loans in reliance upon the warranties.

51.   PMAC breached one or more of its warranties relating to the Loans.

52.   Lehman, Lehman's agents, and any and all assignees of Lehman's rights have substantially performed all of their obligations under the Agreement.

53.   PMAC has refused or otherwise failed to compensate or otherwise indemnify LBHI for PMAC's breach of one or more express warranty.

54.   As a result of PMAC's breach of one or more express warranty contained in the Agreement, LBHI has sustained actual and consequential damages, in an amount to be proven by the evidence, to which LBHI is entitled plus prejudgment interest pursuant to New York law, attorneys' fees, litigation costs and all other fees and costs provided by the Agreement.

## VI.  PRAYER FOR RELIEF

WHEREFORE, LBHI respectfully requests that this Court enter judgment in its favor and against defendant PMAC as follows:

(a) For all damages arising from or relating to PMAC's breaches of contract, in an amount to be proven at trial;

(b) For all damages arising from or relating to PMAC's breach of one or more express warranty, in an amount to be proven at trial;

(c) For recoverable interest;

(d) For the costs and expenses incurred by LBHI in enforcing PMAC's obligations under the Agreement, including reasonable attorneys' fees and costs and any expert witness fees incurred in litigation; and

(e) For such other relief as the Court deems just and proper.

Dated: December 13, 2013

Respectfully submitted,

By:  _____*/s/ Christopher P. Carrington*_____
         Christopher P. Carrington
         Michael J. Gates
Email: Carrington@fostergraham.com
mgates@fostergraham.com
**Foster Graham Milstein & Calisher, LLP**
360 S. Garfield Street, Ste. 600
Denver, Colorado 80209
Telephone: (303) 333-9810
Facsimile: (303) 333-9786
*Attorneys for Plaintiff Lehman Brothers Holdings Inc.*